UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

HILARY ANDRIESIAN,

          Plaintiff,

v.

COSMETIC DERMATOLOGY, INC.,
a Florida Corporation,

          Defendant.

Case No. 3:14-cv-01600-ST

FINDINGS AND
RECOMMENDATION

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Hilary Andriesian, filed this class action in the Multnomah County Circuit Court for the State of Oregon against defendant, Cosmetic Dermatology, Inc. ("CDI"), for false advertising in the sale of its skin care product, Dr. Brandt's Pores No More Anti-Aging Mattifying Lotion ("Pores No More").  Plaintiff alleges claims for violations of Oregon's Unlawful Trade Practices Act, ORS 646.605-.656 ("OUTPA") (First Claim), violations of Florida's Deceptive and Unfair Trade Practices Act, Fla Stat §§ 501.201-.213 ("FDUTPA") (Second Claim), and breach of warranty (Third Claim).  She seeks to represent a nationwide class of "all persons in the United States who purchased Pores No More for individual or household uses" on the Second and Third Claims and an Oregon Subclass of "all persons in

Oregon who purchased Pores No More for individual or household uses" on the First and Third Claims.

CDI removed the case to this court based on the Class Action Fairness Act ("CAFA") which confers original jurisdiction over class actions where the matter in controversy exceeds $5 million and any member of the plaintiff class is a citizen of a different state than any defendant. 28 USC § 1332(d)(2), (4), & (6).  Plaintiff is a citizen of Oregon, and CDI is a citizen of both Delaware and Florida.  Notice of Removal (docket #1), ¶¶ 14–15.  The Complaint seeks restitution payments totaling between $2 and $4.5 million "to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful or unfair business act or practice."  Complaint, Prayer for Relief, ¶ E.  It also seeks pre-and post- judgment interest; injunctive and declaratory relief; the disgorgement of "all monies, revenues, and profits;" actual and statutory damages; punitive damages; and attorney fees and costs.  *Id*, Prayer for Relief. This prayer alone cannot meet the CAFA amount in controversy requirements.  If the amount in controversy is not "facially apparent" from the complaint, the court may consider facts in the removal petition as well as evidence submitted by the parties, including "summary-judgment-type evidence relevant to the amount in controversy at the time of removal."  *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F3d 373, 377 (9th Cir 1997) (citation omitted).  Accordingly, CDI has submitted evidence that the other remedies sought, when aggregated with the restitution payment, exceed $5 million.  Notice of Removal, ¶¶ 19-20; Collue Decl. (docket #12), ¶¶ 5-8. Therefore, this court has jurisdiction under CAFA.

Pursuant to FRCP 12(b)(6), CDI has filed a Motion to Dismiss all claims (docket #15). For the reasons stated below, that motion should be granted in part and denied in part.

///

2 – FINDINGS AND RECOMMENDATION

## STANDARDS

In order to survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations which, when accepted as true, give rise to a plausible inference that defendants violated plaintiff's rights. *Ashcroft v. Iqbal*, 556 US 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 US 554, 556-57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678. In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F3d 1480, 1484 (9th Cir 1995).

## ALLEGATIONS

Plaintiff alleges that CDI sells Pores No More directly to consumers online and in retail stores nationwide for approximately $60.00 per 1.7 oz. bottle (excluding tax and shipping charges). Complaint, ¶ 7. The packaging and marketing materials include, among others, representations that Pores No More is "Oil-Free" and "helps delay the natural signs of aging by maintaining the longevity & activity of stem cells in the skin." *Id*, ¶ 9 & Ex. 1. In reliance on those representations, plaintiff purchased Pores No More for approximately $60.00 in or about the summer of 2013 from a retail store in the greater Portland area. *Id*, ¶¶ 11-12, 41.

She alleges that CDI's representation that Pores No More is "Oil Free" is false because it contains at least three ingredients that are oils: (a) Hydrogenated polyisobutene, which is a synthetic oil used as a mineral oil substitute; (b) Lavender oil which is derived from the flower spikes of certain species of lavender; and (c) *Melaleuca alternifolia* (Tea Tree Leaf) oil, which is derived from the leaves of a plant native to Australia. *Id*, ¶¶ 13-14.

With respect to the product's efficacy, plaintiff alleges in 2008, an organization called Mibelle Biochemistry ("Mibelle") published an article in the SOFW Journal titled "Plant Stem Cell Extract for Longevity of Skin and Hair." *Id*, ¶ 15 & Ex. 2. The SOFW Journal is not a peer-reviewed journal, but promotes the formulation and sale of cosmetic treatments typically by publishing research studies performed by companies that promote and sell the cosmetic product being "tested." *Id*, ¶ 25.

In its article, Mibelle claims to have harnessed the power of a species of apple known for its longevity to create a serum that could revitalize the skin. *Id*, ¶ 16. Specifically, on the basis of several tests, Mibelle claims that the apple's stem cells stimulated human cell proliferation. *Id*. First, Mibelle scientists extracted apple stem cells, mixed the extract into a preparation called PhytoCellTech™ Malus Domestica, then introduced that solution to human embryonic stem cells from umbilical cord blood that reportedly proliferated by 80%. *Id*, ¶ 17. Second, Mibelle scientists stressed the human embryonic stem cells with UV light, noting that 50% of such cells cultured in a growth medium alone died, while cells cultured in the presence of the PhytoCell Tech™ extract experienced "only a small loss of viability." *Id*, ¶ 18. Third, Mibelle scientists exposed fibroblast cells, which are common in connective tissue, to hydrogen peroxide for two hours until they showed signs of aging, meaning that several genes essential for cell proliferation and growth were significantly down-regulated. *Id*, ¶ 19. They then incubated the cells in a 2% PhytoCell Tech™ extract for 144 hours, concluding that the extract neutralized the down-regulation or even induced an up-regulation, as well as stimulated an antioxidant enzyme. *Id*. Finally, Mibelle scientists conducted a study of 20 participants who used a 2% PhytoCell Tech™ cream twice daily to the "crow's feet" area around the eye, concluding that "wrinkle depth" was reduced 8% by two weeks and 15% after four weeks. *Id*, ¶ 20. After publication of Mibelle's

article, cosmetic and skincare companies worldwide began featuring the serum in products. *Id*, ¶ 21. Mibelle filed a patent application for PhytoCell Tech™ and is a principal supplier of apple stem cell extract to the skincare and cosmetic industry. *Id*, ¶ 26.

Pores No More contains "Malus Domestica Fruit Cell Culture Extract" which CDI's marketing materials refer to as "apple stem cells." *Id*, ¶ 22. CDI claims that its apple stem cell extract "helps delay the natural signs of aging by maintaining the longevity and activity of stem cells in the skin." *Id*, ¶ 23. In making this claim, CDI relies exclusively or primarily on the results reported in the Mibelle article. *Id*, ¶ 24. However, Mibelle scientists did not perform tests under conditions that support efficacy claims concerning adult stem cells in the skin's basal layer after topical application in a lotion. *Id*, ¶ 27. In addition, the Mibelle article fails to provide adequate information or data underlying its "clinical study" and includes misleading photographs. *Id*, ¶¶ 29, 31-32. Even with proper procedures under proper conditions, the group of 20 participants is statistically insignificant. *Id*, ¶ 30. In fact, Dr. Daniel Schmid, Mibelle's research director and primary author of the article, has admitted that "[t]he anti-ageing benefit for the skin after topical application could not be confirmed in a clinical trial." *Id*, ¶ 33. Therefore, CDI's efficacy claims based on the Mibelle article are false and misleading. *Id*, ¶ 34.

CDI's claims are also false or misleading because the apple stem cell extract in Pores No More must be alive to provide any purported benefit, generally cannot survive long-term embedded in a cream, and at a minimum, is likely to degrade over time (both before and after a consumer's purchase) resulting in a significantly diminished benefits, if any. *Id*, ¶ 35. Moreover, CDI does not disclose the amount of apple stem cell extract in Pores No More which may be significantly less than the 2% concentration used in the Mibelle study. *Id*, ¶ 36.

As a result of CDI's misrepresentations, plaintiff purchased and paid more for Pores No More than she otherwise would have, and CDI was able to command a price significantly above a fair market price. *Id*, ¶¶ 42-43. Plaintiff first discovered that Pores No More may have been falsely advertised in about May 2014. Before that time, she did not and could not have known facts that make an objectively reasonable person aware of a possible injury for which CDI was responsible. *Id*, ¶ 46.

## FINDINGS

### I.    Failure to State a Claim

All three claims are premised on allegations that CDI made the following false representations on the product packaging of Pores No More: (1) the Pores No More was "Oil-Free" ("Oil-Free" representation); and (2) that it "helps delay the natural signs of aging by maintaining the longevity & activity of stem cells in the skin" ("anti-aging" representation). *Id*, ¶ 12. CDI seeks to dismiss all three claims for failing to adequately allege untrue statements or actionable misrepresentations.

To state a false labeling or advertising claim under each theory, plaintiff must affirmatively plead and prove that the statements at issue are either objectively false or at least likely to mislead a reasonable consumer. Under the UTPA, plaintiff must plead and prove that Pores No More has "characteristics, ingredients, uses, benefits, . . . or qualities that . . . [it] do[es] not have." ORS 646.608(1)(e); *see also Lund v. Arbonne Int'l, Inc.*, 132 Or App 87, 94, 887 P2d 817 (1994) (affirming summary judgment on UTPA claim where plaintiff effectively admitted that defendant's representation was not false). Similarly, under the FDUTPA, plaintiff must plead and prove that Pores No More's labeling is likely to deceive a reasonable consumer. *See Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen.*, 761 So2d 1256, 1263-64

(Fla Ct App 2000) (affirming dismissal of FDUTPA claim because alleged omissions were not deceptive).

Although not specifically alleged in the Complaint, plaintiff appears to premise her breach of warranty claim on Oregon's version of § 2-313 of the Uniform Commercial Code ("UCC"), ORS 72.3130. *See* Complaint, ¶ 79 (referring to remedy under ORS 72.6070(3)(a), which provides remedies for ORS 72.3130). Generally, an express breach of warranty claim under § 2-313 of the UCC requires proof that "the goods did not comply with the warranty, that is, that they were defective.'" *Genetti v. Caterpillar, Inc.*, 261 Neb 98, 112, 621 NW2d 529 (2001) (citation omitted). A warranty is not created by "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods." ORS 72.3130(2).

"[G]eneralized, vague and unspecific assertions constitut[e] mere 'puffery' upon which a reasonable consumer [cannot] rely." *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F3d 1000, 1015 (9th Cir 2003) (holding that a company's statements "generally describing the 'high priority' [it] placed on product development and alluding to marketing efforts" that suggested the product was almost complete and would be released could not form the basis for a fraud or negligent misrepresentation claim). The court may determine as a matter of law whether a statement is puffery. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F2d 242, 245 (9th Cir 1990) ("District courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and we can think of no sound reason why they should not do so.").

///

///

7 – FINDINGS AND RECOMMENDATION

1.    **Falsity of "Oil-Free" Representation**

CDI acknowledges that Pores No More contains three ingredients that plaintiff considers to be oils, namely a synthetic oil, lavender oil, and tea tree leaf oil. However, it argues that "oil" is an inherently ambiguous term that is not susceptible to proof of truth or falsity and that, in any event, the ingredients are listed on Pores No More's label. Neither of those arguments is persuasive.

To support its argument that the term "oil" is indefinite, CDI relies on various dictionary definitions referring to "any of a large class of substances" or "any of various substances" or "any of a number of liquids" which are typically unctuous, viscous, and combustible. Although these definitions are broad, they are not in any sense inherently ambiguous or indefinite to a reasonable speaker of English. To the contrary, "Oil-Free" is an objectively verifiable factual representation. Either the product contains oil, whether natural or artificial, in its ingredients or it does not. *See Lam v. Gen. Mills, Inc.*, 859 F Supp2d 1097, 1103-04 (ND Cal 2012) (finding the term "gluten free . . . communicates nothing more than the absence of gluten in the product").

In support, CDI cites cases which are easily distinguishable. In *Viggiano v. Hansen Natural Corp.*, 944 F Supp2d 877, 894-95 (CD Cal 2010), the court dismissed a breach of warranty claim against the maker of Diet Hansen's Premium Sodas on the ground, among other things, that the representation of the product as "premium" was not sufficiently specific to be susceptible of truth or falsity. In *In re All Terrain Vehicle Litig.*, 771 F Supp 1057, 1060-61 (CD Cal 1991), *aff'd* 978 F2d 1265 (9th Cir 1992), the court dismissed fraud claims against vehicle manufacturers who characterized their products as "all terrain vehicle[s]" and "precisely balanced in the frame for superb handling," among other representations.

"'[A]dvertising which merely states in general terms that one product is superior is not actionable.'" *Cook, Perkiss & Liehe, Inc.*, 911 F2d at 246, quoting *Smith–Victor Corp. v. Sylvania Elec. Prods., Inc.*, 242 F Supp 302, 308-09 (ND Ill 1965) (advertiser's statement that its lamps were "far brighter than any lamp ever before offered for home movies" was ruled puffery, but quantifying the superior brightness with statements such as "35,000 candle power and 10-hour life" supported a potential Lanham Act claim). "However, misdescriptions of specific or absolute characteristics of a product are actionable." *Id* (citation and internal quotation marks omitted). Both of the cases cited by CDI involve highly subjective terms that cannot be empirically tested and that vary according to their context. In contrast, the representation that Pores no More is "Oil-Free" is not merely general in nature, but conveys the specific factual representation that its ingredients do not contain oil. CDI asserts that Pores No More is "Oil-Free" in the sense that it does not contain a moisturizing oil ingredient, but that claim is not expressed either on the package or the bottle. Since it is plausible that a reasonable consumer would read "Oil-Free" to mean the product contains no artificial or synthetic oil ingredient, the "Oil-Free" representation is potentially deceptive and actionable.

CDI also argues that a reasonable consumer could not be misled because the allegedly oil-based ingredients were plainly listed on the product's label.[1] Plaintiff responds that the ingredient list, which is located on the bottom flap of the package and in small print, does not dispel the confusion created by the "Oil-Free" claim which is prominently displayed on the front of the label and on the bottle.

The Ninth Circuit has rejected CDI's argument that an ingredient list clears up any possible misconception by a consumer:

[1] CDI concedes that, in any event, the question of whether reasonable consumers would be expected to read the ingredient list is material only to plaintiff's FDUTPA claim. Reply In Support of Motion to Dismiss (docket #21), p. 7.

9 – FINDINGS AND RECOMMENDATION

> We disagree with the district court that reasonable consumers
> should be expected to look beyond misleading representations on
> the front of the box to discover the truth from the ingredient list in
> small print on the side of the box. . . .  We do not think that the
> [Food and Drug Administration] requires an ingredient list so that
> manufacturers can mislead consumers and then rely on the
> ingredient list to correct those misinterpretations and provide a
> shield for liability for the deception.  Instead, reasonable
> consumers expect that the ingredient list contains more detailed
> information about the product that confirms other representations
> on the packaging.

*Williams v. Gerber Prods. Co.*, 552 F3d 934, 939-40 (9th Cir 2008); *accord Lam*, 859 F Supp2d at 1105 ("ingredients list cannot be used to correct the message that reasonable consumers may take from the rest of the packaging").

Following *Williams*, numerous district courts in the Ninth Circuit have rejected similar arguments that a consumer who cares about the ingredients must read the ingredient list.  *See Rojas v. Gen. Mills, Inc.*, No. C 12-5099 WHO, 2014 WL 1248017, at *7-8 (ND Cal Mar. 26, 2014) (rejecting contention that the ingredient list on the product packaging resolved any possible consumer confusion by identifying which ingredients in the products are not "100% Natural"); *Wilson v. Frito–Lay N. Am., Inc.*, No. C 12–1586 SC, 2013 WL 1320468, at *12-13 (ND Cal Apr. 1, 2013) ("Plaintiffs have adequately pled that a reasonable consumer could interpret a bag of chips claiming to have been 'Made with ALL NATURAL Ingredients' to consist exclusively of natural ingredients, contrary to the reality described in the nutrition box."); *Jou v. Kimberly-Clark Corp.*, No. C–13–3075 JSC, 2013 WL 6491158, at *8-9 (ND Cal Dec. 10, 2013) ("Defendant cannot rely on disclosures on the back or side panels of the packaging to contend that any misrepresentation on the front of the packaging ['pure & natural' diapers] is excused.").

CDI insists that the holding in *Williams* is restricted to cases where the ingredient list corrects a "pointed deception."  That reading of *Williams* is too narrow and is based on other

district court cases that either predate *Williams*[2] or are easily distinguishable.[3]  Even if CDI's

reading of *Williams* is correct, the "Oil-Free" claim on the front of the packaging is a "pointed

deception" that is likely to misrepresent a reasonable consumer that Pores No More contains no

oil.

Thus, this court cannot conclude as a matter of law that no reasonable consumer would be

deceived by the "Oil-Free" label.

### 2.    Falsity of "Anti-Aging" Representation

The Complaint repeatedly contends that references to stem cell activity on Pores No

More's label lack scientific substantiation.  Nonetheless, CDI argues that plaintiff fails to allege

facts that, if true, would affirmatively establish that the statements on which plaintiff relied are

false.  CDI accuses plaintiff of improperly conflating two distinct statements about different

types of stem cells:  (1) Pores No More "helps delay the natural signs of aging by maintaining

the longevity and activity of stem cells in the skin" (Complaint, ¶ 3); and (2) its ingredients

include "apple stem cells."  *Id*, ¶ 22.  CDI contends that plaintiff fails to allege any facts

establishing that the first statement, on which she relied when purchasing Pores No More (*id*,

¶ 41), is false.  And even though plaintiff alleges that the second statement regarding apple stem

cells is false, she does not specifically allege that she relied on it.

Contrary to CDI's reading of plaintiff's allegations, the Complaint clearly links the

ingredient of apple stem cells to the anti-aging representations regarding the benefit to human

stem cells:

---

[2]  *McKinniss v. Gen. Mills, Inc.*, No. 07-2521, 2007 WL 4762172, at *3 (CD Cal Sept. 18, 2007); *McKinniss v. Sunny Delight Beverages Co.*, No. 07-02034, 2007 WL 4766525, at *4 (CD Cal Sept. 4, 2007).
[3]  *Hairston v. S. Beach Beverage Co., Inc.*, 2012 WL 1893818, at *5 (CD Cal May 18, 2012) (finding *Williams* distinguishable where the phrase "all natural with vitamins" was consistent with the ingredient label that listed only natural ingredients and vitamins).

> Second, *CDI represents on its packaging* that Pores No More
> "helps delay the natural signs of aging by maintaining the
> longevity & activity of stem cells in the skin," *and* on its website
> and in marketing materials CDI *specifically links this claim to its
> use of "apple stem cells."* This claim is false (or a minimum
> misleading) because apple stem cells cannot survive in active form
> long-term in a cream, and therefore cannot provide the therapeutic
> anti-aging benefits CDI claims. In addition, the *in vitro* study on
> which CDI's claims are based does not reliably establish the
> claims, with its author even admitting that its results could not be
> confirmed in a clinical trial.

Complaint, ¶ 3 (emphasis added).

There is no mismatch between plaintiff's allegations of falsity regarding the "anti-aging"
representation and the allegations of evidence debunking the efficacy of apple stem cells.
According to the Complaint, CDI attributes its "anti-aging" claim to an ingredient referred to as
apple stem cell extract and relies on a non-peer reviewed journal article reporting the results of
an experiment combining human embryonic stem cells and an apple stem cell extract serum to
support the claim. *Id*, ¶¶ 15-37, Exs. 1-2. In addition, plaintiff alleges that the anti-aging claim
is false or misleading because, among other things, the apple stem cells must be alive in order to
provide any purported benefit. *Id*, ¶ 35.

For purposes of a motion to dismiss, plaintiff has sufficiently alleged facts that would
establish that the "anti-aging" representation is false. Plaintiff should be permitted to prove the
falsity of the anti-aging representation through scientific literature and expert testimony.

## II.    Preemption of "Oil-Free" Claims

CDI argues that even if plaintiff states a claim under state law based on the "Oil-Free"
claim, it is preempted by the Food, Drug, and Cosmetic Act ("FDCA"). The FDCA bars state-
law causes of action that seek to impose "any requirement for labeling or packaging of a
cosmetic that is different from or in addition to, or that is otherwise not identical with, a

requirement specifically applicable to a particular cosmetic or class of cosmetics" under the
FDCA. 21 USC § 379s(a). In other words, for a state law to be preempted it must be: (1) a
requirement for labeling or packaging, and (2) not identical with a specific FDCA requirement.
*See Bates v. Dow Agrosciences LLC*, 544 US 431, 444 (2005).

The FDCA prohibits the "misbranding" of cosmetics. 21 USC § 331(b). A cosmetic is
misbranded "[i]f its labeling is false or misleading in any particular," 21 USC § 362(a), or "[i]f
its packaging or labeling is in violation of an applicable regulation." 21 USC § 362(f). The
Food and Drug Administration ("FDA") has promulgated regulations regarding cosmetic
misbranding, but only in two narrow areas: (1) a label that is misleading with respect to another
product, and (2) a name that includes or suggests one or more, but not all main ingredients.
2 CFR § 701.1. In addition, the regulations require that all ingredients be listed on the package
in descending order of predominance, using ingredient names specified by regulation or by
reference, and in a way "likely to be read and understood by ordinary individuals under normal
conditions of purchase." 21 CFR § 701.3(a)-(c). The list may appear "on any appropriate
information panel in letters not less than 1/16 of an inch in height." 21 CFR § 701.3(b).

CDI asserts that plaintiff's "Oil-Free" claims under the OUTPA, FDUTPA, and
ORS 72.3130 would create a new misbranding requirement that differs from these regulations
and would create new rules for describing a product's ingredients. In support, CDI relies upon
*Crozier v. Johnson & Johnson Consumer Cos.*, 901 F Supp2d 494, 503-04 (D NJ 2012), which
held that the FDCA preempted a claim that defendant's use of its Neosporin yellow and green
color scheme, Signature Gold Mark, trade dress, and goodwill and reputation in a portable spray
misled consumers to believe that the spray contained the same antibiotics as in regular Neosporin
products, even though defendant listed its ingredients as required by FDA regulations.

However, *Crozier* is distinguishable.  It dealt with drugs that are subject to vastly different rules than cosmetics and involved a new product with different ingredients carrying the same brand name.  In contrast, plaintiff alleges that the conspicuous "Oil-Free" claims on the front of the package and bottle are misleading because they expressly contradict the virtually hidden ingredient list, which leads reasonable consumers to erroneously believe that the product contains no oil.  Plaintiff neither suggests that CDI deliberately concealed any information from the ingredient list nor seeks to change the ingredient list.  There is no FDCA regulation governing a label that contradicts the ingredient list.  Plaintiff's claims do not impose any new, different, or additional requirements from those mandated by the FDCA, but instead are consistent with the FDCA's prohibition of labeling that "is false or misleading in any particular."

More importantly, *Crozier* held that the FDCA preempted the allegations that the package labeling was misleading under New Jersey law, but not the allegations concerning advertising and marketing.  *Crozier*, 901 F Supp2d at 503.  To a large extent, plaintiff's claims are premised on advertising and marketing its product as "Oil-Free" on the packaging, website, and marketing materials.  Complaint, ¶¶ 2, 9, 41-45.  Pursuant to *Crozier*, those advertising and marketing claims are not preempted by the FDCA.  In fact, according to the Congressional Record, "advertising issues relating to . . . misleading or deceptive claims are outside the scope of preemption."  *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F Supp3d 467, 475 (SDNY 2014), citing HR Rep. No. 105-399, at 103 (1997) (Conf Rep).

Therefore, plaintiff's state law claims should not be dismissed as preempted by the FDCA.

///

///

### III.    Violations of OUTPA (First Claim)

Plaintiff alleges that CDI violated the OUTPA by:

> a. Representing that Pores No More has "characteristics, . . . uses, benefits, . . . or qualities that [it] do[es] not have" (*id* § 646.608(1)(e));

> b.  Representing that Pores No More is "original or new [when it is] deteriorated" (*id* § 646.608(1)(f));

> c.  Representing that Pores No More is "of a particular standard, quality, or grade . . . [when it is] of another" (*id* § 646.608(1)(g));

> d.  Advertising Pores No More "with intent not to provide [it] as advertised" (*id* § 646.608(1)(i));

> e.  Concurrently with the tender of Pores No More, "fail[ing] to disclose any known material defect or material nonconformity" (*id* § 646.608 (1)(t)); and

> f.  "Engag[ing] in any other unfair or deceptive conduct in trade or commerce"  (*id* § 646.608(1)(u)).

Complaint, ¶ 58 (alterations in original).

CDI contends that the First Claim is properly analyzed only under ORS 646.608(1)(e) and that the remaining alleged violations of other provisions of the OUTPA should be dismissed.

As for the violation of ORS 646.608(1)(f), CDI argues that the Complaint does not allege that CDI represented that its product was "original or new," much less that any such representation was false.  Plaintiff has not submitted any contrary argument.  This alleged violation may be premised on the product containing apple stem cells which degrade over time.  However, plaintiff purchased a new product.  Therefore, this alleged violation should be dismissed.

As for the violation of ORS 646.608(1)(g), CDI argues that the Complaint does not allege that CDI represented that its product was "of a particular standard, quality, or grade," much less

that any such representation was false.  However, plaintiff alleges that CDI represented that its

product was of a particular quality, namely "Oil-Free," and that it was not of the quality as

represented because it contains three oils.  Although this alleged violation may be somewhat

duplicative of a violation of ORS 646.608(1)(e), it is not subject to dismissal for that same

reason.

        As for the violation of ORS 646.608(1)(i), CDI asserts that plaintiff complains about

Pores No More's label, not its advertising.  However, plaintiff's claim is not limited solely to the

label on the package and bottle, but also is directed at website and marketing materials that Pores

No More is "Oil-Free."  Complaint, ¶ 2.  To that extent, it may be somewhat duplicative of the

violation of ORS 646.608(1)(e), but is not subject to dismissal for that reason.  CDI also asserts

that this provision is aimed at "bait and switch" tactics that plaintiff does not allege.  *Parrott v.*

*Carr Chevrolet, Inc.*, 156 Or App 257, 270-71, 965 P2d 440, 448 (1998).  However, a "bait and

switch" is a transaction "which makes it unlawful to advertise goods with intent not to provide

them as advertised."  *Id*.  That is arguably what plaintiff alleges, namely advertising Pores No

More as "Oil-Free" with the intent not to provide an oil-free product.

        As for the violation of ORS 646.608(1)(t), CDI contends that the Complaint does not

allege that it knew of a defect in its product and failed to disclose it, as in the sale of used goods,

especially cars.  *Id* at 270, 965 P2d at 448.  Plaintiff responds that the defect, namely the

inclusion of oil, was obvious to CDI which it failed to disclose.  However, plaintiff's claim is

based on a misrepresentation contrary to the ingredient list, rather than a failure to disclose a

known defect.  This court agrees with CDI that the Complaint cannot be read to state a violation

of ORS 646.608(1)(t).

As for the violation of ORS 646.608(1)(u), CDI argues that the Complaint does not specify any "other unfair or deceptive conduct," and even if it did, under ORS 646.608(4), the Attorney General must "first establish[] a rule . . . declaring the conduct to be unfair or deceptive in trade or commerce," which has not occurred here.  CDI's argument is well-taken.  This is a catch-all provision designed to capture unfair or deceptive conduct not otherwise listed in the other subsections but found to be unlawful by the Attorney General.  This is another arrow that should be removed from the plaintiff's quiver.

Accordingly, the alleged violations of ORS 646.608(1)(f), (t) and (u) should be dismissed from paragraph 58 of the First Claim.

**IV.    Violation of FDUTPA (Second Claim)**

**A.    Plaintiff's Standing**

CDI argues that plaintiff cannot state a claim under FDUTPA because she is not a Florida resident.  Plaintiff argues that she has a claim under Florida's statute because injury occurred in Florida.  She does not allege the product's connection to Florida other than the fact that defendant is headquartered there.  Nevertheless, CDI argues that even an allegation that Pores No More is manufactured and labeled with the misleading information in Florida would be insufficient to state a claim under the FDUTPA.

FDUTPA protects the "consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla Stat § 501.202(2).  The statute defines "consumer" as "an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination."  Fla Stat § 501.203(7).  The statute

also defines "interested party or person" as "any person affected by a violation of this part or any person affected by an order of the enforcing authority."  Fla Stat § 501.203(6).

Without interpreting these definitions or any other of the statute's express terms, the Florida Court of Appeals (Fourth District) held that "only in-state consumers can pursue a valid claim under the [FDUTPA]."  *Oce Printing Sys. USA, Inc. v. Mailers Data Servs., Inc.*, 760 So2d 1037, 1042 (Fla Dist Ct App 2000), citing *Coastal Physician Servs. of Broward Cnty., Inc. v. Ortiz*, 764 So2d 7, 8 (Fla Dist Ct App 1999) ("Other states can protect their own residents."). Accordingly, it reversed the trial court's order certifying a nationwide class and remanded the case to give plaintiffs the ability to redefine their class to fall within the provisions of the FDUTPA.

A year later, the Florida Court of Appeals (Third District) disagreed with *Ortiz* based on the statutory definitions for the terms "interested party or person," "consumer," and "trade or commerce."  It observed: "Conspicuously absent from this chapter, . . . is any language which purports to confine the provisions of FDUTPA or limit the . . . enforcement authority to commercial transactions involving only Florida residents."  *Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs, State of Fla.*, 761 So 2d 1256, 1261 (Fla Dist Ct App 2000).  Citing a later decision by the Fourth District that applied the FDUTPA to both in-state and out-of-state residents in a class action, the Third District opined that the Fourth District had "receded, *sub silentio*, from its earlier holding in *Ortiz*" and held that when "the offending conduct occurred entirely within [Florida]," there is no articulated legislative intent to preclude the FDUTPA from protecting persons affected by the conduct residing outside the state.  *Id* at 1262.

However, the Fourth District later clarified that *Ortiz* survived subsequent case law.  In *Hutson v. Rexall Sundown, Inc.*, 837 So2d 1090 (Fla Dist Ct App 2003), it held that the FDUTPA did not protect non-resident customers of products sourced from Florida.  In *Hutson*, as case here, the alleged deceptive trade practice was the nationwide sale of products (calcium supplements) with a misleading label.  *Id* at 1094.  The Fourth District found that "the alleged wrong was committed, and the damage done, at the site of the sale of [the] product; that is in the various states where members of the purported class made their purchases" and affirmed the denial of certification.  *Id*.  *Hutson* is the latest ruling by any Florida court interpreting the FDUTPA.  Therefore, this court deems it controlling in this case.

Accordingly, the Second Claim alleging a violation of the FDUTPA should be dismissed.

**B.    Conflict of Law**

Even if plaintiff can state a claim under the FDUTPA, defendant argues in the alternative that plaintiff may not avail herself of the FDUTPA under Oregon's conflict of law rules.  Plaintiff responds that defendant's conflict of law argument is premature and should be addressed during the Rule 23 certification stage.

Although courts disagree, most hold that a case should not be dismissed based on a conflict of law analysis prior to class certification.  *In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, No. MDL 13-2438 PSG PLAX, 2014 WL 5311272, at *18-19 (CD Cal Sept. 4, 2014) (holding that at the pleading stage of litigation, "a choice of law analysis would be premature"); *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-VC, 2014 WL 3933921, at *1 (ND Cal Aug. 8, 2014) ("Under Ninth Circuit law, then, at least in certain circumstances, a consumer protection class action can proceed under the laws of multiple states, . . . the Court will not strike the nationwide class claims at the pleading stage."); *Forcellati v. Hyland's, Inc.*, 876 F Supp2d

1155, 1159 (CD Cal 2012) ("Courts rarely undertake choice-of-law analysis to strike class claims at this early [pleading] stage in litigation."); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F Supp 2d 1077, 1096 (SD Cal 2010) ("In a putative class action, the Court will not conduct a detailed choice-of-law analysis during the pleading stage.").

> Until the [p]arties have explored the facts in this case, it would be premature to speculate about whether differences in various states' consumer protections laws are material in this case. . . . [O]nce the relevant facts of the case have been explored during discovery, it is possible that Plaintiff could narrow or define the class in such a way at the class certification stage to make any differences between applicable laws immaterial.  Moreover, should choice-of-law analysis appear to pose problems at the class certification stage, [p]laintiff could seek to certify subclasses of putative class members from individual states or subclasses of class members from groups of states with consumer protections laws that are not materially different.

*Forcellati*, 876 F Supp2d at 1159.

CDI contend that a conflict of law has already arisen because the OUTPA requires proof of falsity and reliance while the FDUTPA only requires that a reasonable consumer would be deceived and no reliance.  Even if true, it is premature to undertake that analysis on a motion to dismiss.

## **RECOMMENDATION**

For the reasons set forth above, CDI's Motion to Dismiss (docket #15) should be GRANTED as to the alleged violations of ORS 646.608(1)(f), (t) and (u) in the First Claim and as to the Second Claim and otherwise should be DENIED.

///

///

## <u>SCHEDULING ORDER</u>

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due Friday, March 20, 2015.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED  March 3, 2015.

s/  Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge